UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| SHANE HAFFEY and HEATHER McKEEVER, | CIVIL ACTION NO. 5:17-124-KKC |
| Plaintiffs, | |
| V. | **OPINION & ORDER** |
| BARBARA M. SEYMOUR, in her official and individual capacity, and UNKNOWN MEMBERS OF THE COMMISSION ON LAWYERS MISCONDUCT, in their official and individual capacity,[1] | |
| Defendants. | |

\*\*\*\*\*

Heather McKeever is a licensed attorney in the Commonwealth of Kentucky who is the subject of a disciplinary investigation and prosecution in South Carolina for alleged professional misconduct in the Palmetto State. McKeever and her husband, Shane Haffey, bring this suit to strike down as unconstitutional an administrative rule related to the disciplinary process McKeever is facing and to hold Barbara M. Seymour, the Deputy Disciplinary Counsel of the South Carolina Office of Disciplinary Counsel, and Unknown Members of the South Carolina Commission of Lawyer Conduct accountable for their involvement in the proceedings.

This matter, however, cannot go forward as Kentucky's ties to this case are too loose to haul these out-of-state defendants before this Court. Because Kentucky's long-arm statute does not reach so far as to touch any of the defendants' alleged conduct, this case is dismissed

---

[1] The caption uses the name reflected on the docket sheet. The proper name is the "South Carolina Commission of Lawyer Conduct" and it will be used in this opinion.

1

for want of personal jurisdiction. McKeever and Haffey must find another forum in which to assert their claims.

I.

Heather McKeever and Shane Haffey are a married couple who reside in Lexington, Kentucky. McKeever is a licensed attorney in the Commonwealth with experience in the area of mortgage document fraud (Compl. ¶ 7), and Haffey is a heritage breed livestock farmer. (Compl. ¶ 8). Sometime in August 2016, McKeever received a letter from the South Carolina Commission of Lawyer Conduct. (Compl ¶ 28). The letter was signed by Jody W. Gilham, an administrative assistant for the Commission. (Compl. ¶ 29). Gilham carbon copied Barbara Seymour, the Deputy Disciplinary Counsel of the South Carolina Office of Disciplinary Counsel on the letter. (Compl. ¶ 29). Dated July 16, 2016, the letter informed McKeever that the Commission of Lawyer Conduct had launched a disciplinary investigation into her alleged unauthorized practice of law in a lawsuit regarding her and her husband's real property located in Mount Pleasant, South Carolina. The letter also noted that a hearing on the matter was set for September 19, 2016, and notified McKeever that she must attend or face default. (Compl. ¶ 30).

Apparently McKeever did not attend the hearing, as a document obtained by McKeever titled "Default Order" later revealed.[2] (Compl. ¶ 31). The Order noted that Seymour had filed the underlying disciplinary charges on April 7, 2016, and served McKeever in accordance with Rule 14(c) of the South Carolina Rules for Lawyer Disciplinary

---

[2] The circumstances surrounding McKeever's receipt of the letter are ambiguous at best. The complaint states that the August letter notified McKeever of a September 19 hearing date, which at that point was a month away. The next line in the complaint alleges that the letter also stated that "the hearing panel ruled that you are in default and that the factual allegations have been deemed admitted" (Compl. ¶ 30), implying that the hearing already took place. The August letter is not filed in the record, so it is not at all clear what actually occurred or when McKeever was deemed to have been in default.

2

Enforcement. (Compl. ¶ 32). McKeever denies having received any notice or service before receiving the August letter. (Compl. ¶ 33).

In response to the disciplinary proceedings, McKeever, along with her husband, sued Seymour, in her individual and official capacity, and Unknown Members of the South Carolina Commission of Lawyer Conduct asserting the following:

1. A declaratory judgment action requesting that this Court declare Rule 14(c) of the South Carolina Rules for Lawyer Disciplinary Enforcement, which refers to the service of process requirement of disciplinary charges and is codified as a part of Rule 413 of the South Carolina Appellate Court Rules ("SCACR"), unconstitutional under the Due Process Clause of the Fourteenth Amendment (Compl. ¶¶ 56–72.);
2. A claim under 42 U.S.C. § 1983 against all defendants for violations of their "ministerial and discretionary duties" related to the prosecution of the disciplinary complaint filed against McKeever (Compl. ¶¶ 73–83.);
3. A claim under the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, alleging that the defendants "us[ed] the mails to defraud Haffey of money and/or property" (Compl. ¶¶ 84–88.);
4. A claim for "Tortious Interference with Court Ordered Agreements and Private Contracts" (Compl. ¶¶ 89–93.);
5. A violation of the South Carolina Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, related to Deputy Disciplinary Counsel's alleged interference with plaintiffs' right to counsel at the September 16, 2016 disciplinary hearing (Compl. ¶¶ 94–98); and
6. A violation of the South Carolina Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, related to Deputy Disciplinary Counsel's alleged "forcible recruitment" of Betty McMichael—the plaintiffs' formal real estate agent—to act as a Complainant against McKeever in the disciplinary action proceeding against McKeever (Compl. ¶¶ 99–103).

The defendants now move under Federal Rule of Civil Procedure 12(b)(2) to dismiss this action for a lack of personal jurisdiction and improper venue, or, in the alternative, under

Rule 12(b)(3) to transfer this action to the District of South Carolina pursuant to 28 U.S.C. § 1404. (DE 5). Because the Court lacks the requisite power to exercise personal jurisdiction over the defendants, this case will be dismissed on that ground alone without need to address the defendants' alternative arguments.

II.

When a federal court's subject-matter jurisdiction is based on a federal question, like it is here, the court's exercise of personal jurisdiction must both be authorized by the forum state's long-arm statute and be in accordance with the Due Process Clause of the Fourteenth Amendment. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (internal citations omitted). The Supreme Court of Kentucky has construed Kentucky's long-arm statute to have significance independent of the constitutional inquiry. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011); *see also Newberry v. Silverman*, 789 F.3d 636, 641 (2015). In Kentucky, therefore, "the proper analysis of long-arm jurisdiction over a nonresident defendant [under Kentucky's long-arm statute] consists of a two-step process." *Id*. First, a court must examine the plain language of K.R.S. 454.210 to determine whether the alleged conduct or activity of the defendant arises from the type of conduct or activity that is enumerated in the long-arm statute itself. *Id*. Then, only if the long-arm statute covers the type of conduct at issue will a court then assess whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id*.

McKeever and Haffey's claims against the defendants fail at step one because the defendants' conduct, no matter how it is framed, simply does not fit within any of the categories enumerated in Kentucky's long-arm statute. Kentucky elects to extend the reach of its long-arm statute to nine categories of conduct that will subject a defendant to personal jurisdiction in the Commonwealth:

4

1. Transacting any business in this Commonwealth;
2. Contracting to supply services or goods in this Commonwealth;
3. Causing tortious injury by an act or omission in this Commonwealth;
4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;
5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth;
6. Having an interest in, using, or possessing real property in this Commonwealth, providing the claim arises from the interest in, use of, or possession of the real property, provided, however, that such *in personam* jurisdiction shall not be imposed on a nonresident who did not himself voluntarily institute the relationship, and did not knowingly perform, or fail to perform, the act or acts upon which jurisdiction is predicated;
7. Contracting to insure any person, property, or risk located within this Commonwealth at the time of contracting;
8. Committing sexual intercourse in this state . . . ; or
9. Making a telephone solicitation, as defined in KRS 367.46951, into the Commonwealth.

K.R.S. § 454.210.

For jurisdictional purposes, the conduct alleged in the complaint can be construed in two ways, neither of which falls within the reach of the Kentucky long-arm statute. First, though not specifically alleged in their complaint, McKeever and Haffey implicitly argue the

defendants had contact with Kentucky because the defendants sent a letter in August 2016 notifying McKeever of the impending hearing regarding the disciplinary proceedings ongoing in South Carolina. As an initial matter, such contact is rarely sufficient to satisfy the minimum due process requirement. *See, e.g., Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (upholding a district court's decision that a defendant who sent only one letter to a plaintiff did not purposely avail himself of the laws in the state where the letter was sent). But more relevant here, McKeever and Haffey make no attempt in their complaint or in their response to the defendants' motion to dismiss to fit this conduct into one of the enumerated categories set out in the Kentucky long-arm statute. The reason is presumably obvious. The long-arm statute does not cover this type of conduct, which abruptly ends the Court's inquiry at this "initial step." *See Caesars*, 336 S.W.3d at 57.

The complaint also alleges that the defendants injured McKeever and Haffey by virtue of filing and pursuing the disciplinary proceeding against McKeever in South Carolina. Of the nine categories of conduct listed in the statute, only categories four, five, and nine allow for jurisdiction when the act in question took place outside of Kentucky. Category four requires that the defendant regularly engage in or solicit business in Kentucky. McKeever and Haffey do not and cannot argue that the defendants did so. In order for category five to apply, the defendants would have had to sell goods outside Kentucky with the knowledge that they would be brought into the state. This is also a no-go. Lastly, there are no allegations that the defendants made a telephone solicitation into the Commonwealth. Without a fit, the Court's inquiry must, again, end here. *See Caesars*, 336 S.W.3d at 57.

As the complaint itself makes clear, the alleged conduct by the defendants is not a product of a random act of investigatory overreach by the South Carolina Office of Disciplinary Counsel or South Carolina Commission of Lawyer Conduct into the professional actions of a lawyer with no connection to either entity's state. Rather, everything about this

case has to do with South Carolina. This matter concerns a disciplinary investigation arising from McKeever's alleged unauthorized practice of law while in South Carolina. The property related to the investigation is also in South Carolina. Indeed, there is no allegation that Kentucky has any connection to this action aside from the fact that McKeever and Haffey happen to live in the Commonwealth and received a letter from the defendants while at home in Lexington. Thus, it is clear that the defendants' conduct, no matter how it is framed, does not fit within any of the categories enumerated in Kentucky's long-arm statute.

McKeever and Haffey do not address the applicability of the Kentucky long-arm statute, let alone offer an argument to the contrary. Instead, McKeever and Haffey respond to the defendants' motion to dismiss with vague reference to the fact that the administrative rule the complaint challenges applies "to both out of state attorneys and all lay persons residing outside the State of South Carolina who are not licensed attorneys." (DE 9, at 1). That is true as far as it goes. The administrative rule challenged here provides the mechanism by which the defendants inform out-of-state attorneys of disciplinary actions like the one against McKeever. But that hardly offers a rebuttal to the question whether this Court can exercise personal jurisdiction over these defendants, particularly in the face of the Kentucky long-arm statute. Moreover, if by this argument McKeever and Haffey mean to imply that any court across the country would have personal jurisdiction over the defendants under these facts, such a theory stretches too far to merit further discussion.

To be sure, this Court certainly has the subject-matter jurisdiction to hear the claims alleged in the complaint, *see* 28 U.S.C. § 1331, but no matter a court's ability to hear a claim, it must also have the power to exercise that subject-matter jurisdiction over a particular defendant. The two are separate inquiries that demand separate considerations. And as established above, McKeever and Haffey fail to shoehorn the conduct alleged in the complaint into an enumerated category of the Kentucky long-arm statute.

Perhaps realizing the lack of sufficient contact in Kentucky, McKeever and Haffey use the majority of their two-page response to waive any objection to the defendants' alternative argument for a transfer to the United States District Court for the District of South Carolina. (DE 9, at 2). This request is also problematic. The defendants are not subject to personal jurisdiction in the Commonwealth of Kentucky. As a result, this Court cannot authorize a transfer to South Carolina under 28 U.S.C. § 1404, which is the sole method by which the defendants argue that this case should change jurisdictions. *See Newberry*, 789 F.3d at 643 (citing *Martin v. Stokes*, 623 F.2d 469, 473–74 (6th Cir.1980) ("[The] construction of §1406(a) necessarily limits the application of § 1404(a) to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper.")). Thus, the better course is to dismiss this case for lack of personal jurisdiction, which will allow the plaintiffs, if they so choose, to bring this action in a proper forum.

III.

For the reason stated herein, **IT IS HEREBY ORDERED** that the motion to dismiss (DE 5) for lack of personal jurisdiction filed by the defendants is **GRANTED** and that the complaint (DE 1) is **DISMISSED** without prejudice. The Clerk of Court **SHALL STRIKE** this case from the Court's active docket.

Dated May 17, 2017.

*/s/ Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY